HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REAL PROPERTY LOCATED AT 9144 BURNETT ROAD, SE, YELM, WASHINGTON, *et al.*<br><br>Defendants. | CASE NO. C14-5231 RBL<br><br>ORDER DENYING MOTION TO DISMISS |

## I.  INTRODUCTION

THIS MATTER is before the Court on Claimant Diana Nemes' Motion to Dismiss Amended Verified Complaint for Forfeiture *In Rem*. Claimant Diana Nemes and her husband[1] were extradited to their home country of Romania for alleged tax evasion and setting up an organized criminal group. The United States filed a civil forfeiture complaint against Nemes' real property located in Yelm, Washington. The United States filed an amended complaint adding more defendant properties. Nemes sought dismissal, arguing that the government was

---

[1] While Mr. and Mrs. Nemes were both charged, this Motion to dismiss the forfeiture is brought only by Mrs. Nemes. This Order will use "Nemes" in the singular for clarity, unless the context requires otherwise.

1   erroneously relying on a *bi*lateral treaty, not the required *multi*lateral treaty, known as UNTOC[2].

2   After Oral argument, this Court granted the government leave to amend to rely on the correct

3   treaty, which it did.

4       Nemes again seeks dismissal under Fed. R. Civ. P. 12(b)(6). She argues that the

5   government's reliance on UNTOC to justify forfeiture is still insufficient.  She claims that

6   UNTOC was not intended to apply to garden variety domestic criminal offenses such as tax

7   evasion, or the uncharged crime of money laundering. She also argues that even if UNTOC is a

8   potentially viable forfeiture vehicle, the government's amended complaint still fails to allege

9   sufficient facts, and that it should be dismissed.

10      The United States argues that the crime of setting up an organized criminal group for the

11  purpose of tax evasion is, by itself, a "transnational" offense extraditable under UNTOC. It

12  claims that the money from Nemes' specified unlawful activity was laundered to the United

13  States, and therefore, the Yelm properties purchased with those illegal funds are forfeitable.

14  Because the United States' complaint alleges facts that state a claim for relief that is plausible on

15  its face, Claimant's Motion to Dismiss the Amended Verified Complaint for Forfeiture *In Rem* is

16  **DENIED.**

17                                II.     BACKGROUND

18      The FBI's Seattle Division conducted a joint investigation with the FBI Legal Attaché

19  office in Bucharest, Romania and the Romanian Directiei Nationale Anticoruptie (DNA)

20  involving the Nemes and their associates. The United States claims the Nemes were involved in

21  a tax fraud scheme to avoid paying Romania 53 million Euro in excise taxes on imported diesel

22  fuel. Their complaint alleges that the Nemes laundered the proceeds out of Romania, through

23  ---

24  [2]United Nations Convention against Transnational Organized Crime, G.A. Res. 55/25, U.N. GAOR, 55th Session., U.N. Doc. A/55/383 (2000).

multiple foreign accounts, and into the United States, where they ultimately purchased the properties at issue. When the scheme was discovered, the Nemes were extradited to Romania, where they were indicted for tax evasion and setting up an organized criminal group. The offenses are punishable up to eight and five years, respectively, not counting aggravating circumstances.

The United States commenced this action to forfeit the real property the Nemes left behind, claiming it was used to conceal money laundering, international money laundering, and conspiracy to commit money laundering. These activities support forfeiture under this country's criminal code. *See* 18 U.S.C. § 981(a)(1)(A).

The United States initially relied on a different, bilateral treaty to justify this action. The Nemes filed a motion to dismiss, arguing that the complaint was improperly based on the allegation that she had committed an offense extraditable under a *bilateral* treaty between the United States and Romania. She argued that only *multilateral* treaty offenses give rise to forfeiture. This Court agreed, but, because the defect was curable, granted the United States leave to amend. The United States filed an amended forfeiture complaint relying instead on UNTOC—a multilateral treaty.

Nemes argues that forfeiture statutes must be strictly construed against the government, and that the money laundering statute upon which the United States relies does not apply to foreign tax evasion offenses. She claims that UNTOC applies only to "transnational" offenses—crimes committed in or affecting more than one State—and that none of the crimes Romania charged her with are transnational in nature. Nemes also claims that even if the amended complaint asserted a cognizable legal theory, it consists largely of conclusory legal allegations that are insufficient to show a "specified unlawful activity," her involvement in the scheme, and

a variety of other elements. She argues that the United States has not pled sufficient facts to state a claim for forfeiture.

The United States argues that the crime of setting up an organized criminal group is a transnational offense, extraditable under UNTOC. And, it claims, it has amply supported its legal theory with factual allegations that, if proven, would support forfeiture.

### III.   DISCUSSION

**A.   Fed. R. Civ. P. § 12(b)(6) Standard**

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Aschcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the Court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat a Rule 12(c) motion. *Vazquez v. L. A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988). The purpose of the rule is to encourage decisions on the merits rather than on the precision (or imprecision, as the case may be) of the pleadings. *See Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000).

### B. Extradition under UNTOC is a cognizable legal theory and sufficient facts have been pled to support forfeiture

The United States can forfeit real property that is involved in money laundering. 18 U.S.C. § 981(a)(1)(A). The money laundering statute prohibits financial transactions that involve the proceeds of a "specified unlawful activity," given that a variety of other factors are met. *See* 18 U.S.C. § 1956(a)(1). The money laundering statute defines "specified unlawful activity" as an "offense with respect to which the United States *would be* obligated by a multilateral treaty…to extradite the alleged offender." 18 U.S.C. § 1956(c)(7)(B)(vi). It is important to highlight the use of the language "would be." Even if an individual was initially *extradited* for criminal activity under another statute or treaty, the relevant provisions of an *extraditable* multilateral treaty are still applicable.

The United States argues that it would be obligated to extradite Nemes under UNTOC. Under UNTOC, any violation of a listed offense is extraditable, if it is transnational in nature and involves an organized criminal group. Art. 3 §1. The United States argues that the offense of setting up an organized criminal group with the purpose of engaging in a massive tax evasion conspiracy is a crime worthy of extradition under UNTOC. This Court agrees. UNTOC Article 5

specifically criminalizes participation in an organized criminal group. Article 2 defines an "organized criminal group" as a structured group of three or more persons that acts in concert to commit one or more serious crimes in order to obtain a financial or other material benefit. Art. 2 § (a). A "serious crime" is one punishable by a maximum of at least four years of imprisonment. Art. 2 § (b).

The United States has pled facts sufficiently alleging that tax evasion is a serious crime in Romania as violators can be subject to 8 years of imprisonment. The U.S. has also alleged facts making it plausible that the Nemes were part of an organized criminal group. Accordingly, if the alleged crime of participating in an organized criminal group is "transnational," UNTOC applies. Art. 3 § 1.

Nemes argues that the charged crimes of tax evasion and the setting up of an organized criminal group occurred solely within the borders of Romania, and therefore, are not transnational in nature. The United States, however, does present a cognizable theory that the crime of "setting up an organized criminal group" is, by itself, a transnational offense. An offense is transnational if "it is committed in one State but involves an organized criminal group that engages in *criminal activities* in more than one State." As plausibly alleged in the United States' complaint, Nemes and her criminal organization *illegally laundered* the proceeds of the tax evasion scheme across national borders and into the United States.  The fact that Nemes was not actually charged with money laundering in Romania is not the end of the inquiry.  A criminal conviction is not required to proceed with a statutory *in rem* forfeiture. *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011) (quoting *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362 (1984)).

Furthermore, the allegation of money laundering is, by itself, an extraditable offense under UNTOC. Under UNTOC, it is plausible for the United States to extradite Nemes for the alleged crime of money laundering if the predicate offense is a serious crime, and the relevant conduct is a criminal offense in both States involved. Art. 6 § 2. Based on the facts alleged by the United States, the predicate offense of setting up an organized criminal group with the purpose of engaging in tax evasion would be considered a serious crime, and that same offense is considered criminal under the domestic laws of both the United States and Romania. Thus, extradition under Article 6 is also plausible.

The alleged crimes of setting up an organized criminal group and money laundering are both extraditable under UNTOC. Forfeiture of the defendant properties is plausibly pled. The United States has pled sufficient facts in its second amended complaint to raise a right to relief above the speculative level. Diana Nemes' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss is **DENIED**.

IT IS SO ORDERED.

Dated this 13th day of May, 2015.

                                       RONALD B. LEIGHTON
                                       UNITED STATES DISTRICT JUDGE